# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **DIANN KING AND MIKE KING** | * | **CIVIL ACTION NO. 09-0465** |
| **VERSUS** | * | **JUDGE JAMES** |
| **BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTH CARE, LLC, SCHERING-PLOUGH CORPORATION, AND APOTEX CORPORATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court are two motions to dismiss [doc # 21 & 23] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants, Bayer Healthcare Pharmaceuticals, Inc. ("Bayer") and Schering Corporation ("Schering"). The district court referred the motions to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons assigned below, it is recommended that Defendants' motions to dismiss be GRANTED IN PART, insofar as they seek dismissal of plaintiffs' punitive damages claim and all other claims not arising under the Louisiana Products Liability Act. It is further recommended that the motions to dismiss otherwise be DENIED. In addition, because the same reasoning applies to the claims against the non-moving defendant, Apotex Incorporated, it is recommended that the court dismiss with prejudice Plaintiffs' punitive damage claims and all other claims not arising under the LPLA as to Apotex Incorporated as well.

## BACKGROUND

On March 23, 2009, Plaintiffs, Diann and Mike King, filed the above-captioned suit against

Bayer Pharmaceuticals Corporation, Bayer Health Care, LLC, Schering-Plough Corporation, and Apotex Corporation, for damages allegedly sustained as a result of Plaintiff Diann King's using the prescription drug ciprofloxacin, most commonly know by its trade name, Cipro. (Compl. ¶¶ 12, 16). King states that "Defendants,[1] by themselves, or by the use of others, did manufacture, create, design, assemble, test, label, sterilize, package, promote, supply, market, sell, advertise, and otherwise distribute in interstate commerce, the prescription drug Cipro." *Id.* at ¶ 18. King was prescribed Cipro on numerous occasions beginning on or about March 14, 2005 and continuing until May 2008. *Id.* at ¶ 12.[2] King contends that as a result of her Cipro use, she suffered injuries to both feet and ankles, including a fracture, ligament tears and chronic calcific insertional Achilles tendonitis ("tendonitis") of her right foot and ankle, which have required two surgeries to date. (Compl. ¶¶ 14-16).

Plaintiffs allege that the Defendants "intentionally, wantonly, fraudulently, recklessly, negligently, grossly negligently, and/or carelessly failed to ascertain and report the existence, nature and extent of the risks of tendon rupture, damage and/or injury associated with Cipro . . . and failed to comply with FDA specifications and requirements in the design, manufacturing, and distribution." (Compl. ¶¶ 28-29). The complaint sets forth the following counts: (I) negligence; (II) negligent

---

[1] Plaintiffs originally named Bayer Pharmaceuticals Corporation and Bayer Health Care, LLC; as defendants; however, these entities were the incorrect parties; therefore, on April 22, 2009, Plaintiff filed an Amended Complaint replacing Bayer Pharmaceuticals Corporation and Bayer Health Care, LLC, with the proper defendant, Bayer Healthcare Pharmaceuticals, Inc., along with the remaining Defendants, Schering Corporation (incorrectly named Schering-Plough Corporation) and Apotex Corporation. (Am. Compl. ¶ 2 [doc. # 11]). On June 3, 2009, Plaintiffs filed a Second Amended Complaint to correctly identify Apotex Corporation as Apotex Incorporated. (Second Am. Compl. ¶ 5 [doc # 35-1]).

[2] Plaintiff was prescribed Cipro on an "as needed" basis to treat kidney stones and urinary tract infections.

misrepresentation; (III) strict products liability-failure to warn; (IV) strict products liability-defective product; (V) strict products liability-pursuant to Restatement Second of Torts 402a (1965); (VI) breach of express warranty; (VII) breach of implied warranties; (VIII) unjust enrichment; (IX) battery; and (X) loss of consortium. (Compl. ¶¶ 30-78).

Plaintiffs seek restitution, compensatory damages, permitted statutory damages, punitive damages, an award of pre-judgment and post-judgment interest, attorney's fees and court costs, as well as any further relief deemed fit. (Compl., Prayer for Relief).

On May 11, 2009, Bayer Healthcare Pharmaceuticals, Inc., along with Schering Corporation, filed the instant Motions to Dismiss Non-LPLA Claims for Failure to state a claim for which relief can be granted. The Defendants contend that the Louisiana Products Liability Act ("LPLA"), Louisiana Revised Statutes Annotated § 9:2800.51 (1988), *et seq.*, serves as Plaintiffs' exclusive remedy against a manufacturer, and that Plaintiffs have not properly alleged any claims under the LPLA; therefore, Defendants argue that Plaintiffs' claims for negligence and negligence per se (Count I), negligent misrepresentation (Count II), strict products liability, including but not limited to strict products liability pursuant to Restatement Second of Torts 402a (1965) (Counts III-V), breach of implied warranties (Count VII), unjust enrichment (Count VIII), battery (Count IX), and Plaintiffs' request for punitive/exemplary damages are outside the permissible scope of the LPLA and should be dismissed. On May 26, 2009, Plaintiffs filed a memorandum in opposition to the motion to dismiss. [doc # 30]. Defendants filed a reply brief on June 4, 2009. [doc # 37].

## 12(b)(6) STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a dismissal is permitted where the claimant fails "to state a claim upon which relief can be granted." If the complaint "lacks an

3

allegation regarding a required element necessary to obtain relief," a dismissal is proper. *Borskey v. Meditronics, Inc.*, No. 94-2302, 1998 WL 122602, at 3 (E.D. La. March 18, 1998) (*quoting Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Because this court must construe the facts of the complaint to be true, even if doubtful, the plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face," but not necessarily probable. *Id.* "The standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Id.*[3]

## **ANALYSIS**

Defendants contend that Plaintiffs' claims for negligence, negligent misrepresentation, strict products liability-failure to warn, strict products liability-defective product, strict products liability-pursuant to Restatement Second of Torts 402a (1965), breach of implied warranties, unjust enrichment; and battery are barred pursuant to the Louisiana Products liability Act, which serves to establish the exclusive theories of recovery under products liability. Defendants are correct in their

---

[3] Plaintiffs' opposition relies on these contentions as well as the Fifth Circuit's decision in *Rios v. City of Del Rio*, 44 F.3d 417, 420-421 (5th Cir. 2006), stating "the complaint must contain either direct allegations on every material point to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."

assertions regarding Plaintiffs' non-LPLA claims; however, Plaintiffs' complaint does contain sufficient factual allegations to support valid claims under the Louisiana Products Liability Act.

a) **LPLA Exclusivity**

Under Louisiana law, the Louisiana Products Liability Act ("LPLA"), Louisiana Revised Statute § 9:2800.51, *et seq.*, provides "the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." La. Rev. Stat. Ann. § 9:2800.52 (1988); *see also, Jefferson v. Lead*, 106 F.3d 1245, 1251 (5th Cir. 1997).[4]

Although Plaintiffs argue that their claims fall under the LPLA, Plaintiffs also argue that their negligence, negligence per se, and strict liability claims are viable pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C.A. § 301, *et seq.* Plaintiffs contend that "a Louisiana State Court should respect Louisiana law, unless there is some federal impediment to application of that law contained in federal legislation." (Opp. Memo. pgs 3-4) (*citing Brodtmann v. Duke*, 708 So. 2d

---

[4] Defendants cited numerous cases where the courts rejected theories of recovery that are not enumerated in the LPLA. *See, Lege v. Wal-Mart Louisiana, LLC, et al.*, (W.D. La. Mar. 2, 2009) (dismissing fraud, negligence, false misrepresentations, intent to deceive and gross negligence as outside the LPLA); *Derise v. Origin Medsystems, Inc.*, No. 05-712 (W.D. La. Jan. 24, 2006) (dismissing negligence, failure to properly and adequately test, failure to properly and accurately market, label, package and/ or advertise claims as outside the LPLA); *Bell v. Bayer Corp., et al.*, No. 01-2018, (W.D. La. Sept. 22, 2004) (dismissing claims for negligence, fraud and misrepresentation); *Robinson v. Bayer Corp., et al.*, No. 01-2217 (W. D. La. Dec. 20, 2004) (dismissing negligence, fraud, and misrepresentation claims, pursuant to LPLA); *Barrette v. Dow Agrosciences, L.L.C.*, No. 02-1677, 2002 WL 31365598, at *4 (E.D. La. Oct. 18, 2002) (dismissing plaintiff's claims of negligence, strict liability, redhibition, breach of implied warranty, and fraud and misrepresentation).

447 (La. App. 4th Cir. 1998)).[5] Plaintiffs argue that, where federal law may apply, the LPLA would supplement their available claims under the FDCA. *Id.* at pg 4. However, under the *Erie* Doctrine, Louisiana law is appropriate in this situation on the grounds that a federal court sitting in diversity applies state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also*, *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 906 (E.D. La. 2007) (applied substantive law of plaintiff's home state in defective drug product case).

Plaintiffs contend that the FDCA allows claims for negligence, negligence per se, strict liability and other theories; however, the court in *Doucet, et al v. Danek Medical, Inc., et al*, held that 'Louisiana does not recognize any claim for violations of FDA regulations. The only remedies available to plaintiffs in this case are provided in the LPLA." *Doucet, et al v. Danek Medical, Inc., et al*, No. 96-2439 (W.D. La. June 28, 1999), 1999 U.S. Dist. LEXIS 18889. In another Western District of Louisiana case, *McNeely, et al. v. Danek Medical, Inc., et al.*, No. 94-0655 (W.D. La. July 8, 1999), 1999 U.S. Dist. LEXIS 18815, plaintiffs argued that the FDCA preempted the LPLA and allowed them to pursue claims outside of the LPLA. However, the court rejected this argument stating "it is clear that Plaintiff's only recourse . . . is to proceed under the LPLA . . . Under the LPLA, only four exclusive theories of liability are available to plaintiffs." (Defs.' Reply Mem. pg 3) (*quoting McNeely v. Daneck Medical, Inc.*, No. 94-0655.) The undersigned agrees with the reasoning of these decisions.

---

[5] Although Plaintiffs' opposition relies on *Brodtmann*, in that case, the LPLA was applied as a supplement to general maritime law, which is a much more narrow area of law than products liability. Additionally, Plaintiffs rely on *Lavergne v. America's Pizza Co.*, 838 So. 2d 845 (La. App. 3d Cir. 2003), where the court upheld a claim for negligence against a manufacturer; however, the manufacturer was also the employer of an employee who was found negligent; thus, the manufacturer was held vicariously liable in its capacity as an employer, not as a manufacturer.

Accordingly, pursuant to the LPLA, Plaintiffs' claims against Defendants for strict liability, negligence and negligence per se are not viable as independent theories of recovery outside of the LPLA framework. *Jefferson, supra.* The LPLA's exclusivity provision further precludes Plaintiffs' claims for unjust enrichment,[6] breach of implied warranty,[7] and negligent misrepresentation.[8]

**b) <u>Sufficiency of the LPLA Allegations</u>**

Although Bayer and Schering contend that Plaintiffs have failed to state any viable claims, the factual allegations in Plaintiffs' complaint are sufficient to state claims under the LPLA. To hold a manufacturer liable under the LPLA, a plaintiff must establish: "damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R. S. 9:2800.54 A. The product is unreasonably dangerous if, and only if, the product is: (1) unreasonably dangerous in construction, (2) unreasonably dangerous in design, (3) unreasonably dangerous due to an inadequate warning, or (4) unreasonably dangerous because it does not conform

---

[6] *See, Hilton v. Atlas Roofing Corp.*, 2006 U.S. Dist. LEXIS 30284 (E.D. La. May 17, 2006) (dismissing unjust enrichment claim as precluded by the LPLA).

[7] Assuming that Louisiana recognizes a breach of implied warranty claim separate and apart from a redhibition claim. *See, Dawson Farms, LLC v. BASF Corp.*, 2008 U.S. Dist. LEXIS 39826, *7 n2 (W.D. La. May 16, 2008).

[8] *See, Jefferson*, 106 F.3d at 1251 (dismissing claims for negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness, and civil conspiracy); *Grenier v. Medical Eng'g Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000) (dismissing claims for strict liability, negligence, breach of warranty of fitness for a particular purpose, breach of implied warranty; misrepresentation/fraud; fraud by concealment; false advertising; negligent infliction of emotional distress; and fear of future product failure), *affirmed*, 243 F.3d 200 (5th Cir. La. 2001); and *Ingram v. Bayer Corp.*, 2002 U.S. Dist. LEXIS 10402 (E.D. La. May 29, 2002) (dismissing claims for negligence, gross negligence, strict liability, fraud, misrepresentation, concealment, conspiracy, suppression and willful, wanton and reckless conduct)

to an express warranty. La. R. S. 9:2800.54 B. In other words, to state a cause of action under the LPLA, Plaintiff must allege:

1. that the defendant is a manufacturer of the product;

2. that the claimant's damage was proximately caused by a characteristic of the product;

3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and

4. That the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson*, 106 F.3d at 1251.

Here, Plaintiffs specifically allege that Cipro is defective and unreasonably dangerous in design as well as unreasonably dangerous due to an inadequate warning and non-conformance to an express warranty. (Compl. ¶¶ 26, 28). Plaintiffs further allege that Defendants "did manufacture, create, design, assemble, test, label, sterilize, package, promote, supply, market, sell, advertise, and otherwise distribute in interstate commerce, the prescription drug Cipro." (Compl. ¶ 18). Plaintiffs state that Diann King was prescribed Cipro on numerous occasions and that she used the drug in a reasonably foreseeable manner. *Id.* at ¶ 12. Plaintiffs also contend that they suffered damages as a proximate cause of the unreasonably dangerous conditions of Cipro.

Plaintiffs elaborate by stating that the Defendants failed to provide "proper warnings regarding possible tendon rupture, damage and/or injury associated with the use of Cipro in that the warnings given did not accurately reflect the symptoms, scope or severity of such injuries and health risk." *Id.* at ¶ 45. Plaintiffs further allege that they learned of Cipro's defects via the news media, which stated that the drug had been identified by the Federal Drug Administration as carrying a potential risk for tendon ruptures and related foot injuries. *Id.* at ¶ 17. Plaintiffs also contend that

8

Defendants failed to perform adequate testing and failed to effectively warn users, pharmacists and physicians. *Id.* at ¶¶ 45-46. The complaint continues by alleging defective design, " in that when [Cipro] left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation, . . .[Cipro] was more dangerous than an ordinary consumer would expect, and more dangerous than other similar medications." *Id.* at ¶ 51. Plaintiffs also allege that if proper testing had been completed on the medication, the serious problems would have been revealed prior to its placement in the market; thus, inadequate warnings contribute to Defendants' fault because " they knew or should have known that [Cipro] created a risk of tendon rupture, damage, and/or injury and related conditions and diseases," and even after placing Cipro on the market, the Defendants' failed to provide adequate warnings to users or consumers and continued to promote the medication. *Id.* Plaintiffs continue by alleging that Cipro is unreasonably dangerous, and that at all times, a safer alternative medication existed. *Id.* at ¶¶ 55-56.

Finally, Plaintiffs also allege Cipro is unreasonably dangerous because it does not conform to the express warranty that "Cipro was safe and effective as clinically tested and was of merchantable quality and fit for the use for which the drug was intended." *Id.* at ¶ 63.

Clearly, Plaintiffs' complaint contains the requisite factual allegations to state a claim under the LPLA. Moreover, the factual allegations support claims under the LPLA, even though Plaintiffs' complaint used titles for their claims that fell outside the LPLA. *See, Rathborne v. Rathborne,* 683 F.2d 914, 917 (5th Cir. 1982) ("complaint need not correctly categorize the legal theories giving rise to the claims; it must merely allege facts upon which relief can be granted.") (citation omitted). Thus, although some of plaintiffs' claims are barred by the LPLA, plaintiffs' products liability allegations surpass mere speculation and "raise a reasonable expectation that discovery will reveal

9

evidence of the necessary claims or elements." *In re Southern Scrap Material Co., LLC*, *supra*.

**c) Punitive Damages and Attorney's Fees**

In their complaint, Plaintiffs assert the right to recover punitive damages and attorney's fees. Under Louisiana law, however, exemplary or punitive damages are not recoverable unless expressly provided for by statute. *Albert v. Farm Bureau Ins., Inc.*, 940 So. 2d 620, 622 (La. 2006) (citation omitted).[9] Plaintiffs fail to allege either of the two specific circumstances where exemplary damages are allowed under Louisiana law. *See*, La. Civ. Code Arts. 2315.4 and 2315.7. Plaintiffs' claims for punitive damages should be dismissed.

Similarly, Louisiana law does not allow recovery of attorneys fees except where authorized by statute or contract. *See* La. Code Civ. Proc. Ann. art 1920; *See also, Kinsinger v. Taco Tico, Inc.*, 861 So.2d 669, 671-672 (La. App. 5th Cir. 2003); *Smith v. Shirley*, 815 So.2d 980,989 (La. App. 3d Cir. 2002). No statute or contract authorizes the recovery of attorney's fees in this case; therefore, dismissal of Plaintiffs' claims for attorney's fees is also warranted on this basis.

**d) Apotex Incorporated**

Although Defendant Apotex Incorporated failed to file a similar motion to dismiss, it is recommended that any and all claims against it not arising under the Louisiana Products Liability Act be dismissed as well. The court possesses the inherent authority to dismiss the action *sua sponte,* without motion by a defendant. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) *(citing Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *See also, Spann v. Woods*,66

---

[9] Under Louisiana's Conflict of Laws provisions, the issue of damages (including punitive damages) in a products liability case is governed by the law of Louisiana when, (1) the injury was sustained in Louisiana by a person domiciled or residing in Louisiana; or (2) when the product was acquired in Louisiana and caused injury in Louisiana or injured someone domiciled in this state. La. Civ. Code Art. 3545.

F.3d 322, 1995 WL 534901 (5th Cir. 1995) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer). The Fifth Circuit has held that a "district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'"); McCoy v. Wade, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties) (*citing Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

For the reasons set forth above,

**IT IS RECOMMENDED** that the motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) [doc. # 21 & 23] filed by defendants, Bayer Healthcare Pharmaceuticals, Inc. and Schering Corporation, be **GRANTED IN PART**, and that judgment be entered in favor of Bayer and Schering **DISMISSING WITH PREJUDICE** Plaintiffs' punitive damages and attorney's fees claims and all other claims not arising under the Louisiana Products Liability Act. **IT IS FURTHER RECOMMENDED** that the motions to dismiss otherwise be **DENIED**.

For the same reasons, **IT IS RECOMMENDED** that judgment be entered in favor of Apotex Incorporated **DISMISSING WITH PREJUDICE** Plaintiffs punitive damages and attorney's fees claims and all other claims not arising under the LPLA.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objection within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of June, 2009.

_____
**KAREN L. HAYES**
**U.S. MAGISTRATE JUDGE**